CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 27 2008

JOHN F. CORCORAN, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HERBERT JAMES HENRY, JR.,<br>Petitioner, | )<br>)  Civil Action No. 7:07cv00076<br>) |
| v. | )  **MEMORANDUM OPINION**<br>) |
| UNITED STATES OF AMERICA,<br>Respondent. | )  By: Hon. Glen E. Conrad<br>)  United States District Judge |

Petitioner Herbert James Henry, Jr. filed this action as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The case is presently before the court on respondent's motion to dismiss, the report and recommendation of United States Magistrate Judge Michael F. Urbanski, and petitioner's objections to the magistrate judge's findings. For the reasons that follow, the court will overrule petitioner's objections, will adopt the magistrate judge's report and recommendations regarding the issue of whether petitioner's trial counsel was ineffective in failing to file a direct appeal, and will dismiss as waived petitioner's claim that counsel failed to object to an alleged sentencing violation. Accordingly, the court will grant respondent's motion to dismiss.

I.

On February 24, 2005, a grand jury returned a sixteen-count indictment against petitioner and ten other defendants. Petitioner was charged with conspiring to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count One); and four counts of possession of equipment, chemicals, products, or materials used to manufacture methamphetamine (Counts Eleven, Twelve, Fifteen, and Sixteen). On June 23, 2005, by written plea agreement, petitioner pleaded guilty to a lesser-included offense in Count One of conspiracy to manufacture fifty (50) grams or more of a mixture or substance containing methamphetamine (Count One) and possession of chemicals and other materials used to manufacture methamphetamine (Count

Eleven), in violation of 21 U.S.C. §§ 841(b)(1)(A), 843(a)(6), and 846. See Criminal Case No. 7:05-cr-00003 (W.D. Va. Oct. 24, 2005). Petitioner further waived his right to appeal any sentencing guideline issues, to collaterally attack the judgment and sentence imposed by the court, and to bring any claim he might have regarding ineffective assistance of counsel known and not raised at the time of sentencing. In return, the United States moved to dismiss Counts Twelve, Fifteen, and Sixteen, and petitioner received full credit for acceptance of responsibility and was offered the opportunity to earn a motion for substantial assistance. The United States also reserved the option to declare the plea agreement void and to terminate petitioner's opportunity to provide substantial assistance if petitioner breached any provision of the plea agreement at any time. Finding that petitioner was fully competent and capable of entering an informed plea and that his guilty plea was knowing and voluntary, the court accepted his plea at the conclusion of the hearing.

During the sentencing hearing on October 17, 2005, the defense made an oral objection challenging a six-point enhancement calculated in the Pre-Sentence Investigative Report ("PSR"), and the court heard evidence in support of that objection.[1] Transcript of Sentencing Hearing, October 17, 2005 [hereinafter Sentencing Hr. Tr.] at 2-3, 4-25. The evidence established that petitioner, his wife, and three children all resided on North View Street in Narrows, Virginia. A search warrant led to the discovery in the residence of several items and chemicals used to manufacture methamphetamine. Wendy Sue Henry, petitioner's wife, testified that, because of her concerns about the safety of the children, she often requested that petitioner remove the items, specifically the dangerous chemicals, from the house. Subsequent to the search, the children were

---

[1] The PSR calculations increased petitioner's based offense level of 28 by six points, pursuant to U.S.S.G. § 2D1.1(b)(6)(C), because the offense involved the manufacture of methamphetamine and created a substantial risk of harm to the life of a minor.

2

seized by Child Protective Services. The court ultimately overruled petitioner's objection and determined, by a preponderance of the evidence, that the six-point enhancement was appropriate in determining petitioner's adjusted offense level. Sent. Hr. Tr. at 6-7.

The PSR established that petitioner had a total offense level of 31 and a criminal history category of II. PSR ¶ 41, 68. Accordingly, the guideline sentence range was a term of imprisonment of 121 to 151 months.[2] PSR ¶ 68. The statutory mandatory minimum and maximum terms for Count One was 5 to 40 years imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(B), and the statutory maximum term for Count Eleven was 10 years imprisonment, pursuant to 21 U.S.C. § 843(a)(6). PSR ¶ 70. Petitioner was sentenced to a term of 132 months as to Count One, followed by a four year term of supervised release, and 120 months as to Count Eleven, followed by a three year term of supervised release; the terms of 132 months and 120 months were to be served concurrently. Sent. Hr. Tr. at 37. In accordance with the plea agreement, the court dismissed the remaining counts of the indictment pertaining to petitioner. The Judgment Order was signed and entered on October 24, 2005; petitioner did not note an appeal. See Docket Entry No. 247.

On February 15, 2007, petitioner filed the instant pro se motion pursuant to § 2255, claiming that his trial counsel provided ineffective assistance in that (1) he failed to object to an alleged sentencing violation under United States v. Booker, 543 U.S. 220 (2005), and (2) he failed to file an appeal. On August 17, 2007, the court, finding that it was unable on the existing record to resolve the issue of whether trial counsel, Mark W. Claytor, Esq. ("Claytor"), was ineffective in failing to file an appeal, entered a memorandum opinion and order stating that it would be necessary to

---

[2] If petitioner had not pleaded guilty and had not been given full credit for acceptance of responsibility, his guideline range would have been a term of imprisonment of 168-210 months. PSR ¶ 69.

conduct an evidentiary hearing on the issue. The court did not reach the merits of petitioner's Booker claim, based on its finding that the remaining claim in a habeas petition should be dismissed without prejudice if a district court grants a petitioner's habeas motion due to counsel's failure to file a direct appeal. See Docket Nos. 6, 7. By separate order entered the same day, the court referred this matter to United States Magistrate Judge Michael F. Urbanski to hold an evidentiary hearing and submit proposed findings of fact and a recommended disposition. An evidentiary hearing was conducted on January 16, 2008.

Based on the evidentiary hearing testimony, the transcript of petitioner's sentencing hearings, petitioner's guilty plea, and the information contained in the PSR, the magistrate judge concluded that petitioner did not meet his burden of proving that Claytor was ineffective for failing to file a notice of appeal. The magistrate judge recommended that respondent's motion to dismiss be granted, finding that petitioner failed to present any credible evidence suggesting that he instructed counsel to file a notice of appeal. In support of that finding, the magistrate judge drew the following conclusions: the evidence demonstrates that, in an effort to reduce his sentence, petitioner attempted to assist the government in its efforts to prosecute those involved in the methamphetamine distribution conspiracy, and petitioner knowingly and voluntarily entered a guilty plea; after the sentence pronouncement, petitioner and his wife both made efforts to aid the government with the hope that such efforts would result in a further sentence reduction; all of petitioner's pre-trial and post-trial efforts were designed to reduce his sentence; petitioner did, in fact, receive a substantial benefit at the sentencing hearing for his pre-trial efforts and acceptance of responsibility, and the potential remained for a further sentence reduction; a rational defendant in petitioner's position would not have appealed his conviction; and petitioner was not prejudiced by any alleged failure and,

4

accordingly, any failure by counsel to note an appeal was not constitutionally deficient. Additionally, the magistrate judge found that petitioner's remaining ground for relief, alleging a Booker violation, was without merit.

## II.

By counsel, petitioner timely lodged the following objections to the magistrate judge's report and recommendation:

1. He objects to the finding that counsel did not render ineffective assistance of counsel in failing to note his appeal.

2. He objects to the magistrate judge's determination that he did not ask counsel to file a Notice of Appeal.

3. He objects to the determination that counsel did not render ineffective assistance by failing to raise a Booker challenge to the evidence relied on at sentencing. Although counsel argued against the 6-point guideline enhancement, counsel failed to argue that the purposes of punishment under 18 U.S.C. § 3553(a) would be served by a nonguideline sentence and that the Court had authority to sentence him outside of the Sentencing Guidelines, and in so doing, counsel rendered ineffective assistance.

In accordance with 28 U.S.C. § 636(b)(1), the court shall conduct a de novo review of the magistrate judge's findings to which petitioner has specifically objected.

Petitioner testified at the evidentiary hearing that he and Claytor jointly reviewed the PSR the day before the sentencing hearing. He claimed that during their meeting he told Claytor that he disagreed with the six-point enhancement, but Claytor assured petitioner that his objections to the enhancement would be sustained. Petitioner maintained that he expected to be sentenced to "approximately" a 60 month term of imprisonment, and stated that he was surprised when the court overruled the objections to the sentencing enhancement. Petitioner testified that he recalled the court informing him that he could appeal within ten days, and petitioner alleged that he immediately

5

informed the court on the record that he wished to do so. However, evidence was thereupon introduced at the evidentiary hearing indicating that, contrary to his assertion, petitioner did not request an appeal on the record.[3]

Petitioner stated that he informed Claytor immediately after the sentencing hearing, while he and counsel were still in the courtroom, that he wanted to appeal the court's sentencing determination. Petitioner claimed that his wife was present when he stated this request. Petitioner further alleged that Claytor agreed to file the appeal and indicated to petitioner that such a process would take over a year to complete. Finally, petitioner claimed that, despite numerous attempts to contact Claytor, he had been unable to communicate with Claytor subsequent to the sentencing hearing. Petitioner alleged that his wife spoke to Claytor by telephone in June of 2006, but that Claytor "rudely" informed her that the appeals process would take a year and then abruptly ended the conversation. Petitioner's counsel at the evidentiary hearing indicated that Wendy Sue Henry had been informed of the evidentiary hearing and was scheduled to testify on petitioner's behalf; however, Mrs. Henry did not appear for the hearing.

When cross-examined by the United States Attorney, petitioner conceded that Claytor reviewed the plea agreement with him and that his plea agreement indicated that no agreement had been made as to the sentence that he would receive. Petitioner further admitted that the court informed him that he could be sentenced up to the maximum provided by the law. Petitioner did not offer any evidence of phone records, letters, or any other communication between himself and

---

[3] The record clearly indicates that, contrary to his contention, petitioner did not request an appeal on the record at the sentencing hearing. Rather, the sentencing hearing transcript reveals that, subsequent to the court's statement to petitioner that, to the extent that he wished to appeal on any ground other than those involving a sentencing guideline factor, such a notice must be filed within ten days, petitioner merely responded, "Thank you, Your Honor." Sent. Hr. Tr. at 40.

Claytor, or between any of his family members and Claytor, indicating petitioner's desire to appeal his conviction.

Claytor testified that he advised petitioner to plead guilty based on the conclusion that the government could establish all elements of the offenses beyond a reasonable doubt. Claytor testified that he reviewed the plea agreement with petitioner in great detail, specifically noting that the court could sentence petitioner at the court's discretion and that petitioner was waiving his right to appeal sentencing guideline issues. However, in pursuit of a § 5K1.1 motion, which could reduce his potential liability, petitioner continued to make efforts to assist the government in the prosecution of various other defendants, including providing information as to other potential co-conspirators. Accordingly, Claytor testified that he reduced all of petitioner's potentially valuable information into writing and submitted it to the government. And, although events at the sentencing hearing indicated that a § 5K1.1 motion was not forthcoming, Claytor and petitioner discussed the remaining possibility that a reduction in sentence could still be obtained through a Rule 35 sentence reduction. Claytor testified that he advised petitioner that the focus of their post-sentence strategy should be to continue to assist the government with the hope of earning a Rule 35 sentence reduction, and that petitioner agreed with this strategy. Consistent with this strategy, Claytor sent a letter to Special Agent Parsons on October 24, 2005, one week after the sentencing hearing, concerning petitioner's continued willingness to cooperate with the conspiracy investigation, and had a telephone conversation with Parsons on October 31, 2005, concerning the same.

Claytor testified that he did not hear petitioner request an appeal in open court or at any time after the sentencing hearing, and that his file contains no notations concerning a request for an appeal. Claytor admitted that he did not consult with petitioner concerning an appeal after

7

sentencing, and that he had no further contact with petitioner subsequent to the sentencing hearing. However, Claytor contended that he did, in fact, have contact with petitioner's wife, as she called several times concerning the possibility of a Rule 35 motion. Claytor stated that these conversations with Mrs. Henry never concerned an appeal. Claytor noted that a Rule 35 motion is normally filed within a year of sentencing.

### III.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show, first, that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This is the test applicable in situations where, as here, trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, petitioner must prove that counsel was ineffective, and that an appeal would have been filed had it not been for the ineffectiveness. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470).

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel

8

consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. If counsel has not consulted with defendant, the court must then determine whether counsel's failure to consult with defendant itself constitutes deficient performance. Id.

Not every failure to consult results in constitutionally deficient performance. Id. at 479. Rather, counsel only has a constitutionally imposed duty to consult where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. at 480. Nonetheless, despite the fact that a defendant pleaded guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea agreement waived his right to appeal. Id.

### A. Petitioner Did Not Ask Counsel to File Notice of Appeal

The court will overrule petitioner's objection to the magistrate judge's finding that petitioner did not ask counsel to file a Notice of Appeal. The court agrees with the magistrate judge that

9

"[t]here is no evidence in the record, beyond petitioner's testimony, suggesting that he asked Claytor to note an appeal." The evidence indicates that petitioner's pre-trial and post-conviction strategies were to reduce his sentence by cooperating with the government. Prior to sentencing, petitioner proffered evidence of the activities of the conspiracy and offered potentially valuable information as to other possible co-conspirators, with the hope of earning a § 5K1.1 motion. Following his sentencing, Claytor contacted the government and sought to help petitioner earn a Rule 35 sentence reduction by continuing to assist the government during his incarceration. Petitioner's concerted effort to qualify for acceptance of responsibility and his continuing attempts to assist the government in hopes of obtaining a reduction in his sentence are at odds with his present contention that he intended to appeal his conviction and sentencing determination. Moreover, pursuant to the written plea agreement, petitioner received substantial benefits as a result of his guilty plea, specifically a three point offense level reduction for acceptance of responsibility, PSR ¶ 38, dismissal of three other counts in the indictment, and the opportunity to earn a subsequent Rule 35 sentence reduction. Had petitioner appealed his sentence, he faced losing these substantial benefits, which he received under the terms of his plea agreement, and any further opportunity to earn a substantial assistance motion. The court agrees with the magistrate judge "that a defendant in petitioner's position would not have forfeited these benefits to file a baseless appeal."

Although petitioner alleges that he and his wife later attempted to contact Claytor to discuss the status of the appeal, this claim is belied by the absence of any documentation or record of any communication following the hearing between petitioner and Claytor, or Wendy Sue Henry and Claytor. And, significantly, petitioner's claim that he informed the court on the record that he wished to file an appeal is clearly contradicted by the sentencing transcript, which undermines the

credibility of his testimony at the evidentiary hearing.[4] Likewise, petitioner's wife's affidavit testimony does not support petitioner's contention that Claytor agreed to file an appeal, because it is reasonable to conclude from its contents that petitioner and his wife simply conflated the concept of an appeal with a Rule 35 reduction. This interpretation is strongly consistent with petitioner and Wendy Sue Henry's specific statements that Claytor informed them that an appeal would take a year to pursue, and Claytor's testimony that all of his conversations with petitioner and his wife centered around the possibility of a Rule 35 motion and that such a motion is normally filed within a year of conviction.

Accordingly, the court will adopt the magistrate judge's report and recommendation as to this claim, and will overrule petitioner's objection to the finding that he did not ask counsel to file a notice of appeal.

### B. Counsel's Failure to Note an Appeal Did Not Render Ineffective Assistance

As discussed above, the evidence establishes that petitioner was advised of his right to appeal by both the court and counsel and that he expressed no desire to appeal. Thus, the issue becomes whether Claytor consulted with petitioner regarding an appeal. The evidence indicates that, aside from discussing the plea agreement's waiver of the right to appeal, Claytor and petitioner did not further discuss the possibility of appealing the sentence. However, the court agrees with the

---

[4] Petitioner was aware of the potential sentence he faced when entering into the guilty plea. The plea agreement specifically states that petitioner's sentencing range for Counts One and Eleven was from five to forty years imprisonment. Plea Agreement at ¶ 1. Thus, petitioner's assertion that he was completely unaware of the potential of receiving the sentence imposed is not credible. Petitioner's testimony – that he expected to receive a sentence of approximately 60 months incarceration, and that he wanted to appeal when he received a sentence of 132 months – is similarly not credible. Claytor indicated that, prior to receiving the PSR, he too expected that petitioner would receive a 60 month sentence; however, after receiving the PSR, which contained information concerning the enhancement, his expectation changed. Given that petitioner concedes that Claytor reviewed those relevant provisions of the PSR with him prior to the sentencing hearing, his assertion that he was completely unaware of the potential sentence subsequent to his guilty plea is not credible.

11

magistrate judge's conclusion that "this does not amount to constitutionally deficient performance because there is no reason to believe that a reasonable defendant in petitioner's circumstances would have wanted to appeal and petitioner did not demonstrate any interest in appealing." This conclusion is supported by the following: petitioner entered into a plea agreement and received certain benefits therefrom; there were no non-frivolous grounds for an appeal; and petitioner did not demonstrate to counsel that he was interested in appealing.

Accordingly, the court concludes that Claytor was not constitutionally deficient in failing to consult with petitioner about an appeal following the sentencing hearing. See Zaldivar-Fuentes v. United States of America, No. 7:06cv00465, 2007 WL 473993, at *4 (W.D. Va. Feb. 7, 2007) (holding that where defendant entered a plea agreement waiving his right to appeal any sentencing guideline issue, there was no apparent non-frivolous ground for appeal, the court apprised defendant of the right to appeal, and defendant did not express an interest in appealing, counsel had no duty to consult); Barksdale v. United States of America, No. 2:05cv00245, 2006 WL 1117813, at *9-10 (E.D. Va. Apr. 26, 2006) (finding no duty to consult when defendant entered a guilty plea, there was no basis for an appeal, and an appeal would have jeopardized defendant's likelihood of receiving a motion for substantial assistance); United States v. Miles, No. 05-658, 2007 WL 218755, at *8-10 (E.D. Pa. Jan. 26, 2007) (stating that when defendant entered a plea agreement waiving his right to appeal or collaterally attack his sentence except on the issue that his sentence exceeded the statutory maximum, counsel knew defendant was sentenced within the statutory maximum, and defendant did not demonstrate any interest in appealing his sentence, counsel had no duty to consult). Therefore, the court will adopt the magistrate judge's report and recommendation as to this claim, and will

overrule petitioner's objection to the finding that counsel did not render ineffective assistance of counsel in failing to note an appeal.

## IV. Booker Claim

In his petition, petitioner contends that the court improperly enhanced his sentence in violation of United States v. Booker, 453 U.S. 220 (2005), and that counsel was deficient in failing to raise this claim. As the court has already observed, the magistrate judge addressed the merits of this claim in his report and recommendation, and petitioner has lodged objections to the magistrate judge's recommended disposition.[5] Upon review of the petition, the court concludes that, as

---

[5] The magistrate judge correctly noted that the record clearly reflects that counsel did, in fact, object to the sentencing enhancement and litigated the issue fully at the sentencing hearing. Regardless, the magistrate judge observed that counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." See Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987), and the court's imposition of a 132 month total term of imprisonment was not improper or erroneous. Long-standing authority permits a sentencing court to make factual findings concerning sentencing factors within a statutory range by a preponderance of the evidence. See United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005); United States v. Garcia, 413 F.3d 201, 220 n. 15 (2d Cir. 2005) ("Judicial authority to find facts relevant to sentencing by a preponderance of evidence survives Booker."); United States v. Pirani, 406 F .3d 543, 552 n. 4 (8th Cir. 2005) (noting that "[n]othing in Booker suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt."); see also United States v. Smith, 198 F. App'x. 444 (6th Cir. 2006) (affirming Sentencing Guidelines enhancement, subsequent to defendant's plea of guilty, for creating a substantial risk to life of minor in course of manufacturing methamphetamine applied to defendant who manufactured methamphetamine in the presence of his two children). Petitioner received a six-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(6)(C), because the court found, by a preponderance of the evidence, that the offense involved the manufacture of methamphetamine and created a substantial risk of harm to the life of a minor. Accordingly, the court exercised its discretion under the guidelines and, considering the enhancement, ultimately sentenced petitioner to 132 months imprisonment as to Count One, 120 months imprisonment as to Count Eleven, to be served concurrently. The magistrate judge also observed that the court had not sentenced petitioner beyond the prescribed statutory maximum as warned against in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). See Blakely v. Washington, 542 U.S. 296, 303-04 (2004) (holding that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence a judge may impose after finding additional facts). To establish that a Sixth Amendment error occurred in his sentencing, petitioner must show that the district court imposed a sentence exceeding the maximum allowed based only on the facts he admitted. See Booker, 453 U.S. at 242 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"); United States v. Evans, 416 F.3d 298, 300 (4th Cir. 2005); United States v. Hughes, 401 F.3d 540, 546-47 (4th Cir. 2005).

The magistrate judge concluded that petitioner cannot meet this burden:

> Henry pleaded guilty to Counts One and Eleven charged in the superseding indictment. The statutory mandatory minimum and maximum terms for Count One was 5 to 40 years imprisonment, pursuant

(continued...)

13

respondent argues in its motion to dismiss, petitioner's Booker claim must be dismissed because petitioner specifically waived the right to collaterally attack his convictions and sentence. The United States Court of Appeals for the Fourth Circuit has held that a waiver of collateral-attack rights is valid as long as the waiver is knowingly and voluntarily made. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused." United States v. Davis, 954 F.2d 182, 186 (4th

---

[5](...continued)
to 21 U.S.C. § 841(b)(1)(B), and the statutory maximum term for Count Eleven was 10 years imprisonment, pursuant 21 U.S.C. § 843(a)(6). Thus, petitioner's total sentence of 132 months of imprisonment was well below the maximum term of forty years imprisonment specified by statute as to Count One; clearly, the court did not exceed its proper authority. See United States v. Green, 163 F. App'x 221, 223 (4th Cir. 2006) (finding that Booker held only that uncharged facts cannot be used to support a sentence exceeding the statutory maximum, not that a sentencing judge may not use uncharged facts to enhance the defendant's sentence within the statutory range; Booker obviously contemplates that sentencing judges can, consistent with the Sixth Amendment, rely on uncharged facts in determining an appropriate sentence within the statutory range); United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004), vacated on other grounds by 543 U.S. 1097 (2005) (finding that Apprendi only applies when an imposed sentence exceeds the maximum authorized by the statute).

These principles, applied here, confirm that Henry's constitutional rights were not violated by the six-level enhancement for creating a substantial risk to life of a minor in the course of manufacturing methamphetamine as the enhancement was properly considered and established by a preponderance of evidence and the ultimate sentence did not exceed the prescribed statutory maximum.

In his objections to the magistrate judge's report and recommendations, petitioner concedes that counsel argued against the 6-point guideline enhancement. However, petitioner's objections raise, for the first time, the argument that "counsel failed to argue that the purposes of punishment under 18 U.S.C. § 3553(a) would be served by a non-guideline sentence and that the Court had the authority to sentence him outside of the Sentencing Guidelines, and in so doing, counsel rendered ineffective assistance." Because the court concludes that petitioner's Booker claim is waived by the terms of the plea agreement, the court will not address the merits of this objection. Nonetheless, regarding petitioner's Booker claim, the court notes that the "court calculated the appropriate guideline range, [and] considered the range in conjunction with other relevant factors under the guidelines and 18 U.S.C.A. § 3553(a)," and a sentence should be affirmed if it is "within the statutorily prescribed range . . . and is reasonable." U.S. v. Hughes, 401 F.3d 540, 546-47 (4th Cir. 2005) (citations omitted). Were the court to consider petitioner's Booker claims, it would find them without merit for the reasons stated in the R&R. Furthermore, the ineffective assistance claim fails here because petitioner cannot show prejudice under Strickland, 466 U.S. at 688, 694. Given that the evidence at sentencing strongly supported the enhancement imposed, petitioner fails to show a reasonable probability that additional arguments from counsel under 18 U.S.C. § 3553 would have had any effect on the court's decision to enhance the sentence.

14

Cir. 1992). The Fourth Circuit has emphasized that "a defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). If a district court determines that a petitioner knowingly and voluntarily waived his collateral-attack rights, and that the petitioner's claims fall within the scope of that waiver,[6] the court must dismiss the § 2255 motion without addressing the merits of those claims. Id. at 222; see, also United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005) (discussing appeal waivers).

Having fully considered the parties' arguments, the court agrees with respondent that petitioner knowingly and voluntarily waived his right to collaterally attack his convictions and sentence. The language and meaning of the waiver of collateral-attack rights are clear and unmistakable. By signing the plea agreement, petitioner affirmed that he had carefully reviewed the agreement with his attorney, and that he understood all of its terms. Moreover, during the plea hearing, petitioner was specifically advised that he was waiving his collateral-attack rights, and that he would be unable to return to court on a later date to complain about his sentence or the way his

---

[6] The Fourth Circuit has recognized a narrow class of claims that fall outside the scope of a valid waiver of appellate or collateral-attack rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver. See United States v. Blick, 408 F.3d 162, 171 (4th Cir. 2005); United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994); LeMaster, 403 F.3d at 220 n. 2; United States v. Embree, 169 Fed. Appx. 761, 762 (4th Cir. 2006).

15

case was handled. As previously observed, petitioner's sworn statements at the plea hearing affirmed that no one had made any promises other than those set forth in the plea agreement, and that no one had coerced or compelled him to plead guilty. Likewise, petitioner affirmed that he was satisfied with the services provided by his attorney, including his attorney's negotiations with the government and his attorney's understanding of the applicable law. Petitioner verified that the description of the plea agreement provided by the prosecutor and his attorney was consistent with his own understanding of the agreement's terms, and petitioner clearly understood that he was deriving valuable consideration in exchange for the waiver. Even had the court not explicitly asked petitioner if he understood the significance of the waiver of collateral-attack rights, the court could not conclude (on the basis of the instant record and the benefits the record indicates petitioner obtained from the plea agreement) that petitioner's decision to accept the waiver was an unknowing or involuntary act. Compare United States v. Attar, 38 F.3d 727, 731-732 (4th Cir. 1994) (finding a waiver of appellate rights to be valid and enforceable, even though the district court did not explicitly ask the defendant if he understood the waiver provision, where other evidence in the record showed that the waiver was knowing and intelligent), and Davis, 954 F.2d at 186 (same), with United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991) (finding a waiver of appellate rights to be invalid, where the transcript of the Rule 11 hearing revealed that the district court did not explicitly question the defendant about his understanding of the waiver provision, and the record did not otherwise indicate that the defendant understood its significance).

For the reasons stated, the plea agreement and the guilty plea hearing transcript conclusively establish that petitioner knowingly and voluntarily waived the right to collaterally attack his convictions and sentence. Because petitioner's Booker claim does not fall within the narrow class

of claims that have been found to fall outside the scope of a valid waiver,[7] his § 2255 motion must be dismissed as to this claim. Accordingly, the court will grant respondent's motion.

V.

Based on its de novo review of respondent's motion to dismiss, the report and recommendation of United States Magistrate Judge Michael F. Urbanski, the evidentiary hearing testimony, the transcript of petitioner's sentencing hearings, petitioner's guilty plea, and the information contained in petitioner's PSR, the court will grant respondent's motion to dismiss, overruling petitioner's objections. Petitioner has failed to establish any credible evidence suggesting that counsel provided constitutionally deficient assistance in failing to note an appeal, and petitioner's Booker claim falls within the collateral-attack waiver to which petitioner agreed in his plea agreement.

Accordingly, the court will grant respondent's motion to dismiss, and petitioner's motion for relief, pursuant to 28 U.S.C. § 2255, will be dismissed in its entirety. An appropriate order will be entered this day.

The Clerk of the Court is hereby directed to send copies of this memorandum opinion and the accompanying order to petitioner and all counsel of record.

ENTER: This 27th day of February, 2008.

/s/ Glen Conrad
United States District Judge

---

[7] See footnote 6, infra.